**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHARLES G., | ) | |
| | ) | |
| Plaintiff, | ) | No. 21-cv-393 |
| | ) | |
| v. | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| KILILO KIJAKAZI, Acting Commissioner | ) | |
| of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Charles G.[1] appeals the decision of the Commissioner of the Social Security

Administration ("Commissioner") denying his application for Supplemental Security Income under

Title XVI of the Social Security Act. The parties have filed cross motions for summary judgment.[2]

As detailed below, Plaintiff's motion for summary judgment (dkt. 17) is DENIED and Defendant's

motion for summary judgment (dkt. 20) is GRANTED. The final decision of the Commissioner is

affirmed.

**1.      SOCIAL SECURITY REGULATIONS AND STANDARD OF REVIEW**

ALJs are required to follow a sequential five-step test to assess whether a claimant is legally

disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial

gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe

impairment (or combination of impairments) meets or equals one considered conclusively disabling

such that the claimant is impeded from performing basic work-related activities. 20 C.F.R.

§ 404.1520; 20 C.F.R. § 404.1523; 20 C.F.R. § 404.1545; 20 C.F.R. § 416.920(a)(4)(i)-(v). If the

---

[1]    In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name(s).

[2]    The Court has construed "Plaintiff's Brief in Support of his Complaint" (dkt. 17) as a motion for summary judgment.

impairment(s) does meet or equal this standard, the inquiry is over and the claimant is disabled. 20 C.F.R. § 416.920(a)(4). If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing his past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider the claimant's age, education, and prior work experience and evaluate whether she is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id*. At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's RFC in calculating which work-related activities she is capable of performing given his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show that there are jobs that the claimant is able to perform, in which case a finding of not disabled is due. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

The Court's scope of review here is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation and signals omitted). The Court reviews the ALJ's decision directly, but plays an "extremely limited" role in that the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citation omitted).

2.    **PROCEDURAL BACKGROUND**

On August 22, 2018, Plaintiff applied for Supplemental Security Income, alleging disability beginning June 1, 2009. (Administrative Record ("R.") 30.) Plaintiff's claims were denied initially and upon reconsideration. *Id*. Plaintiff appealed these denials and participated in an April 23, 2020 Administrative Hearing before an Administrative Law Judge ("ALJ"). (R. 52-74.) On April 30, 2020, the ALJ issued an unfavorable decision, concluding that Plaintiff had not established he was disabled since August 22, 2018, the date his application was filed. (R. 30-44.) Plaintiff requested Appeals Council review, which was denied on October 28, 2020. (R. 2-4.) Thus, the Decision of the Appeals Council is the final decision of the Commissioner, reviewable by the District Court under 42 U.S.C. § 405(g). *See* 20 C.F.R. § 404.981; *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). Plaintiff, through counsel, filed the instant action on January 22, 2021, seeking review of the Commissioner's decision. (Dkt. 2.)

3.    **THE ALJ'S DECISION**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date of August 22, 2018. (R. 32.) At Step 2, the ALJ found that Plaintiff had the severe impairments of hypertension, degenerative joint disease of both knees; talipes equinovarus of both ankles; gouty arthropathy; morbid obesity; and major depressive disorder. *Id*. The ALJ determined that Plaintiff's otitis media and pneumonia were non-severe impairments. *Id*. At Step 3, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. (R. 33.) Before Step 4, the ALJ found that Plaintiff had the residual functional capacity ("RFC") for light work with additional limitations. (R. 36.) At Step 4, the ALJ found Plaintiff unable to perform any past relevant work. (R. 42.) At Step Five, however, the ALJ found Plaintiff capable of performing other jobs existing in significant numbers in the national economy. (R. 42-43.)

Because of these determinations, the ALJ found Plaintiff not disabled under the Act. (R. 43-44.)

## 4. DISCUSSION

Plaintiff raises four issues with the ALJ's opinion: (1) that the ALJ failed to properly evaluate Plaintiff's impairments in combination with one another; (2) that the ALJ failed to adequately assess the opinion of Plaintiff's treating physician; (3) that the ALJ erred in evaluating Plaintiff's subjective statements; and (4) that the ALJ improperly assessed Plaintiff's residual functional capacity. The Court disagrees on all fronts, and addresses each argument in turn, below.

### 4.1 The ALJ Adequately Assessed the Constellation of Plaintiff's Impairments

Plaintiff first complains the ALJ improperly evaluated Plaintiff's impairments in combination with one another. The Court disagrees.

The ALJ in the instant matter crafted an RFC that includes the lifting and handling requirements of light work, but the standing, walking, and sitting requirements of sedentary work.[3] (R. 36.) Plaintiff does not dispute the ALJ's finding he was capable of the lifting requirements within his RFC, and his physicians opined he was capable of much more. (R. 356, 691.) As to the sedentary-level standing, walking, and sitting requirements within the RFC, the ALJ's conclusion is supported by the findings of the state agency medical consultants who reviewed the record, Dr. Richard Bilinsky, M.D., and Dr. James Hinchen, M.D., who both found Plaintiff capable of sedentary work. (R. 81, 92.) The ALJ analyzed Plaintiff's knee and ankle joint degeneration and obesity, and then concluded the findings of Drs. Bilinsky and Hinchen were generally persuasive, but the ALJ added a limitation allowing Plaintiff to use a hand-held assistive device and alternate between sitting and standing due to his acceptance of portions of Plaintiff's hearing testimony. (R. 41.)

The ALJ acknowledged Plaintiff had knee and ankle x-rays showing degenerative changes,

---

[3]  Social Security Ruling ("SSR") 83-10 1983 WL 31251, *6 (1983) (sedentary work involves standing or walking no more than 2 hours of an 8-hour workday and sitting should total approximately 6 hours of an 8-hour workday; and light work involves lifting no more than 20 pounds at a time).

and that he had a body mass index ("BMI") over 40, which classified him as morbidly obese. (R. 37, 39.) The ALJ also noted that Plaintiff's impairments resulted in regular reports of pain exacerbated by physical activity. (R. 37-38.) However, the ALJ pointed out that Plaintiff generally exhibited largely normal physical function on examination. (R. 38.) While he was occasionally noted to have reduced range of motion and mild swelling of his knees and ankles, he retained normal motor strength and sensation throughout the record. (R. 38-39 (citing R. 340, 521, 525, 529, 697).) And while the ALJ acknowledged that at the consultative examination Plaintiff exhibited an antalgic gait and inability to walk without the use of a cane, he had just mild difficulty with maneuvers such as squatting and arising at that exam, and he often presented at other examinations with a steady gait without the use of an assistive device. (*Id*. (citing Tr. 315, 340, 524, 697).) Drs. Bilinsky and Hinchen also considered Plaintiff's x-rays and the abnormal consultative examination findings, but concluded they would not preclude Plaintiff from performing sedentary work. (R. 97-98.) The findings of Drs. Bilinsky and Hinchen, as well as the treatment evidence cited by the ALJ, provided substantial evidence in support of the ALJ's RFC assessment.

There are also multiple other instances throughout the ALJ's decision where he demonstrated he considered the combination of Plaintiff's impairments (his obesity in particular) and how the combination of those impairments impacted his capacity for work. (R. 33 ("Obesity may have an adverse impact on co-existing impairments…These considerations have been taken into account in reaching the conclusions at the 2nd through 5th steps of the sequential disability evaluation process."); R. 38 ("the undersigned has found both of these impairments severe when combined with the claimant's other impairments, specifically, the claimant's gouty arthritis compounds his degenerative joint pain, while his hypertension is compounded by his habitus."); R. 39 ("Consistent with the requirements of SSR 19-2p, the undersigned has considered the claimant's habitus in arriving at the above defined residual functional capacity, as described

below."); *Id*. ("The claimant's knee and ankle pain, as exacerbated by his weight, would limit him to work at light exertion that involves standing for about 2 hours in a typical workday and allows for a sit/stand option as described above."). Consistent with Seventh Circuit case law, the Court finds the ALJ adequately considered the effect Plaintiff's obesity had in combination with his other impairments. *Brown v. Colvin*, 845 F.3d 247, 251 (7th Cir. 2016) ("We find that the ALJ adequately considered [plaintiff's] obesity alongside her severe back pain. As [plaintiff] herself concedes, the ALJ repeatedly asserted that he had considered her obesity.").

The Court finds Plaintiff's challenges to whether the ALJ considered his constellation of impairments to be nothing more than impermissibly asking the Court to reweigh the evidence. *Patricia T. v. Saul*, 2020 WL 2767580, at *6 (N.D. Ill. May 28, 2020). While Plaintiff cites subjective reports and treatment notes he alleges shows the ALJ did not adequately consider his combination of impairments (dkt. 17, pp. 3-5), he identifies nothing the ALJ failed to consider or that is so significant it shows error in the ALJ's analysis. For example, Plaintiff cites his knee x-rays, but the ALJ considered this imaging, and nothing about them proves the ALJ erred by finding Plaintiff was nevertheless capable of sedentary work. (R. 37.) This conclusion is supported by Drs. Bilinsky and Hinchen, who considered the imaging as well. (R. 81, 93.) Plaintiff also cites his prescription for orthotics and alleged foot issues due to gout, but the ALJ repeatedly referred to the orthotics and the fact they were reportedly helpful, and he also reasonably concluded Plaintiff's gout appeared to be controlled with conservative measures. (R. 37-39.) Plaintiff has not demonstrated error in the ALJ's weighing of these mixed findings, especially given the state agency medical consultants' similar findings.

Plaintiff also references his depression as something the ALJ allegedly inadequately considered. However, "[w]hen no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error." *Dudley v. Berryhill*, 773 F. App'x 838, 843 (7th Cir. 2019). (Moreover,

Plaintiff himself pointed to no evidence concerning any incapacitating effects of his depression or its interplay with his other ailments.) The ALJ found Plaintiff had moderate difficulties in the broad area of concentrating, persisting, or maintaining pace, despite that Plaintiff did not allege mental work-related limitations related to his depression when applying for disability and that the state agency that reviewed Plaintiff's application did not consider his depression to be a factor. (R. 34-35 (referencing R. 232, 239), 75-84, 86-95.) Even so, the ALJ noted that Plaintiff reported depressive symptoms to his primary care provider in August 2018, and a year later, spoke to a counselor over the phone and reported lack of motivation and poor concentration. (R. 34 (citing R. 425, 446).) However, the ALJ pointed out that mental status examinations were nonetheless unremarkable, and Plaintiff reported improved mood and motivation from October 2019 through February 2020. (*Id*. (citing R. 437, 446, 449, 641, 655-56, 662). The ALJ concluded that a limitation for work involving just simple, routine, repetitive tasks would accommodate Plaintiff's reports of poor concentration and low motivation, finding that reported improvements in these areas along with unremarkable mental status examinations showed he would be able to focus on this level of work. (R. 41.) The Court is adequately able to trace the ALJ's path of consideration and reasoning related to Plaintiff's depression and its relationship to Plaintiff's other ailments.

In sum, the Court finds the ALJ adequately considered and addressed the interplay of Plaintiff's constellation of ailments in his decision. The Court will not overturn on this basis.

### 4.2     The ALJ Appropriately Evaluated the Medical Opinions

Next, without once naming Plaintiff's physician(s) whose opinions he believes have been given short shrift by the ALJ, Plaintiff complains the ALJ failed to adequately assess the opinion of Plaintiff's treating physician(s). The Court disagrees.

Plaintiff's argument centers around the ALJ's alleged failure to correctly apply the "treating physician rule." (Dkt. 17, pp. 6-7 (citing 20 C.F.R. § 404.1527(c)).) However, the "treating

physician rule" does not apply to this case. Because Plaintiff applied for benefits well after the rule change, the ALJ applied a new set of regulations for evaluating medical evidence that differs substantially from prior regulations. (R. 36, 204.) The regulations no longer use the term "treating source;" instead, they use the phrase "your medical source(s)" to refer to whichever medical sources a claimant chooses to use. *See* 20 C.F.R. § 416.920c (2017). In fact, the Commissioner chose not to retain the "treating source rule" that could require deference to treating source opinion evidence. 82 Fed. Reg. at 5853. As the agency explained, since adoption of the "treating source rule" in 1991, healthcare delivery has changed in significant ways, and the agency's adjudicative experience has shown that the source of an opinion is no longer the most important factor for determining the persuasiveness of the opinion. *Id*. Under the new regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Now, an ALJ focuses on the persuasiveness of the medical opinion(s) or prior administrative medical finding(s) using the following five factors:

> (1) Supportability
> (2) Consistency
> (3) Relationship with the claimant (which includes)
>     (i) Length of the treatment relationship
>     (ii) Frequency of examinations
>     (iii) Purpose of the treatment relationship
>     (iv) Extent of the treatment relationship
>     (v) Examining relationship
> (4) Specialization
> (5) Other factors

20 C.F.R. § 416.920c(a)-(c) (2017). The ALJ will explain how he considered the factors of supportability and consistency, which are the two most important factors in determining the persuasiveness of a medical source's medical opinion or a prior administrative medical finding.

20 C.F.R. §§ 416.920c(b)(2), 416.920c(b)(2) (2017). The ALJ must explain in his decision how persuasive he finds a medical opinion(s) and/or a prior administrative medical finding(s) based on these two factors. *Id*. The ALJ may, but is not required to, explain how he considered the other remaining factors, unless the ALJ finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical. 20 C.F.R. § 416.920c(b)(3) (2017).

As for the evidence in this case, the record contains two medical opinions from providers who treated Plaintiff at Chicago Family Health Center – Dr. Asif Daud, M.D., and Dr. Pramode Keshava, M.D. (R. 356, 691.) In a July 2019 opinion, Dr. Daud stated he had been treating Plaintiff for arthropathy, gout, ankle and knee joint pain, and obesity since February 2019; in a November 2019 statement, Dr. Keshava stated that Dr. Daud had been treating Plaintiff for the same conditions, but added depression as a diagnosis. *Id*. Both doctors opined that Plaintiff would be capable of lifting up to 50 pounds, standing and walking less than 2 hours in a workday, sitting less than 2 hours in a workday, and shifting at will between sitting and standing/walking, and that he would be absent more than 3 days per month. *Id*. Dr. Keshava opined that Plaintiff would need to lie down at unpredictable times during the workday, but Dr. Daud opined he would not. *Id*.

The ALJ considered the opinions of Drs. Daud and Keshava in accordance with the new regulations, and found them unpersuasive given their lack of supportability and consistency. (R. 41-42.) The ALJ pointed out that the doctors did not provide any rationale or support for their statements Plaintiff would be absent for over 3 days per month. (R. 42.) And the ALJ found such absenteeism inconsistent with the record, as were the purported need to lie down throughout the day and inability to sit more than 2 hours a day. *Id*. The ALJ concluded that the mixed and often unremarkable objective findings from Plaintiff's medical providers, the lack of reports of symptom exacerbation with prolonged sitting, and symptom relief with conservative treatment were not

Case: 1:21-cv-00393 Document #: 25 Filed: 07/13/22 Page 10 of 16 PageID #:786


consistent with the doctors' opined limitations. (R. 41-42.)

Plaintiff does not dispute the accuracy of the ALJ's rationale, instead asserting that a lack of a supporting explanation in the opinion is not good cause for diminishing the value of the opinion and arguing the ALJ was required to address other regulatory factors. (Dkt. 17, p. 7.) But the plain language of the new regulations contradicts both arguments. ALJ's are instructed to consider an opinion's supportability, meaning, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)…the more persuasive the medical opinion…will be." 20 C.F.R. § 416.920c(c)(1) (2017). And an ALJ must "explain how [he] considered the supportability and consistency factors for a medical source's medical … [and] may, but [is] not required to, explain how [he] considered" the factors of treatment relationship, specialization, or other factors. 20 C.F.R. § 416.920c(c)(2) (2017). Even if the ALJ had been required to consider these other factors, Plaintiff does not explain how any of them should have compelled the ALJ to weigh the opinions any differently, nor does he point to any specific evidence that could show why the ALJ's rationale was unreasonable. Thus, Plaintiff has failed to show any error in the ALJ's analysis. *See Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). (plaintiff "bears the burden of proving that she is disabled…She failed to carry that burden by not identifying any objective evidence in the record corroborating [her doctor's] statement. Even if reasonable minds could differ on the weight the ALJ gave to the medical evidence, we will not substitute our judgment for that of the ALJ's by reweighing the evidence."). The Court declines Plaintiff's invitation to reweigh the evidence or substitute its judgment for that of the ALJ here. Ultimately, the Court finds the ALJ adequately assessed the opinions of Plaintiff's treating physicians, and will not remand the ALJ's opinion on this basis.

### 4.3    The ALJ Adequately Assessed Plaintiff's Subjective Statements

Next, Plaintiff faults the ALJ for improperly assessing his subjective statements.  Again, the

Court disagrees.

The regulations set forth a two-step process for evaluating a plaintiff's statements about his impairments. *See* 20 C.F.R. § 416.929. An ALJ first determines whether a medically determinable impairment "could reasonably be expected to produce the pain or other symptoms alleged." However, "statements about your pain or other symptoms will not alone establish that you are disabled." 20 C.F.R. § 416.929(a). 20 C.F.R. § 416.929(a). If a claimant's pain could reasonably be expected to produce the pain or symptoms alleged, the ALJ will then then "evaluate the intensity and persistence" of the plaintiff's symptoms and determines how they limit the plaintiff's "capacity for work." 20 C.F.R. § 416.929. In applying the second step, the ALJ assesses whether medical evidence substantiates the plaintiff's symptoms. *See* Social Security Ruling ("SSR") l6-3p. If medical evidence does not confirm the intensity and persistence of the claimed symptoms, the ALJ considers a list of non-exhaustive factors. *See id*. An ALJ is only required to explain the weight given to a claimant's statements in a manner sufficient to provide a fair sense of how the ALJ assessed the claimant's testimony. SSR 16-3p, 2016 WL 1119029, at *9. An ALJ's assessment of a plaintiff's subjective statements of symptoms need not be flawless and is entitled to deference unless it is "patently wrong," which is a "high burden." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015); *Turner v. Astrue*, 390 F. App'x 581, 587 (7th Cir. 2010). Only when an ALJ's assessment lacks *any* explanation or support will a court declare it to be 'patently wrong.' *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008).

First, the ALJ considered the objective medical evidence and found it failed to support Plaintiff's allegations of disabling symptoms. See 20 C.F.R. § 416.929(c)(3)(ii) (location, duration, frequency, and intensity of symptoms should be evaluated in relation to objective medical evidence); *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) ("discrepancies between objective evidence and self-reports may suggest symptom exaggeration."). Second, the ALJ considered Plaintiff's

11

subjective reports to his doctors, finding that they did not corroborate the alleged limiting effects of his symptoms. See 20 C.F.R. § 416.929(c)(3) (ALJ will consider a claimant's statements about his symptoms). For example, the ALJ pointed out that Plaintiff told his doctor that performing his daily activities was not difficult and only once reported an issue with sitting. (R. 38, 42.) Third, the ALJ noted that Plaintiff's treatment had been relatively conservative and effective. *See* 20 C.F.R. § 416.929(c)(3)(iv)-(v) (ALJ will consider the type and effectiveness of a claimant's medication and other treatment). For example, the ALJ pointed out that Plaintiff responded well to counseling and medication for his depression, and that his gout and hypertension were controlled with medication management and dietary changes. (R. 35, 38.) Fourth, the ALJ considered Plaintiff's daily activities, finding that they did not support his allegation of disabling symptoms, pointing out that Plaintiff reported no mental limitations in taking care of his daily activities. (R. 35 (citing R. 239-45).) In all, the ALJ gave multiple valid reasons for finding that the evidence did not support Plaintiff's allegations of disabling symptoms and limitations.

Plaintiff argues the ALJ failed to discuss his subjective complaints of pain or his daily activities, but this is not accurate. The ALJ repeatedly noted the type and level of pain Plaintiff reported to his physicians. *See*, *e.g.*, R. 37 ("claimant alleges he is disabled and unable to work due to pain in his knees and back that prevents him from standing for extended periods."), R. 38 ("claimant's severe impairments have resulted in regular reports of pain…[n]otes dated August 2018 indicate the claimant reported bilateral knee pain at 8 out of 10, which is exacerbated with activity"), R. 39 ("He reported that [orthotics] helped improve his pain from 8 out of 10 to 6 out of 10,"). And the ALJ also considered Plaintiff's reported issues with daily activities. *See*, *e.g.*, R. 37 ("He states he is limited to preparing simple foods like sandwiches because he is unable to stand enough to prepare complex meals, and that he is able to take care of light household chores such as laundry, cooking, and sweeping/mopping."). Instead, Plaintiff's challenge here merely impermissibly asks

the Court to reweigh the evidence, which the Court will not do.[4]

The Court finds the ALJ's discussion of the evidence adequately highlighted the ways in which Plaintiff's assertions varied from the evidence. The Court does not find the ALJ ignored evidence contrary to his conclusions. The ALJ's assessment of Plaintiff's symptoms and accompanying reasoning is adequate to support the resulting conclusions (*i.e.*, supported by substantial evidence). *Barnett*, 381 F.3d at 668. The Court is sufficiently able to assess how the ALJ evaluated Plaintiff's symptoms, as required by SSR 16-3p. Accordingly, the Court finds the ALJ reasonably evaluated Plaintiff's subjective symptoms; the Court declines to remand on this basis.

### 4.4    The ALJ Properly Evaluated Plaintiff's RFC

Finally, Plaintiff complains that limiting him within the RFC to simple, routine, repetitive tasks does not address his moderate limitations in concentration, persistence, or pace. The Court disagrees.

As mentioned above, the ALJ concluded that a limitation for work involving just simple, routine, repetitive tasks would accommodate Plaintiff's reports of poor concentration and low motivation, finding that reported improvements in these areas along with unremarkable mental status examinations showed he would be able to focus on this level of work. (R. 41.) Plaintiff does not dispute this RFC finding except to argue broadly that a restriction for simple, routine, repetitive tasks does not address work-related limitations for someone with moderate difficulties with concentration, persistence, and pace. (Dkt. 17, p. 9.) However, the Seventh Circuit recently rejected the notion that there was an inherent inconsistency between a moderate rating in the broad area of

---

[4]    The only additional information Plaintiff presents he wishes the ALJ would have analyzed more favorably is the fact Plaintiff reported that laying down alleviates his pain, and he was laying down in bed during the Administrative Hearing (which was conducted remotely via telephone due the COVID-19 pandemic). (R. 52, 68; dkt. 17, pp. 8-9; dkt. 24, p. 4.) However, an ALJ's summary need not mention every detail and, in any case, the ALJ mentioned that one of Plaintiff's treatment providers indicated he would need to lie down during the day at an unpredictable basis. (R. 42.) *Gedatus v. Saul*, 994 F.3d 893, 901 (7th Cir. 2021) (ALJ did not ignore evidence contrary to his conclusion, despite ALJ's summary not mentioning every detail; Court declined to reweigh the evidence).

concentration, persistence, or pace, and the ability to perform simple, repetitive tasks at a consistent pace. *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021). The court noted that under the revised mental impairment regulations a "'moderate limitation' is defined…to mean that functioning in that area is 'fair.'" *Id*. (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1). And, in turn, "'fair' in ordinary usage does not mean 'bad' or 'inadequate.'" *Id*. The court concluded that a "moderate" limitation "seems consistent with the ability to perform simple, repetitive tasks at a consistent pace." *Id*. As detailed by the Commissioner, the *Pavlicek* decision reaffirms Seventh Circuit jurisprudence over the last two years affirming a plethora of ALJ decisions where the claimant had a moderate rating in the area of concentration, persistence, or pace and the RFC finding included evidence-based limitations, including limitations like simple, repetitive tasks. (*See* dkt. 21, n. 3.)

Similarly, Plaintiff also argues the ALJ erred in determining his RFC finding without a medical opinion regarding his mental limitations. (Dkt. 17, pp. 7-8.) Plaintiff points out that the ALJ did not have the benefit of a psychiatric consultative examination and that the state agency experts made no mental health findings; but this is because Plaintiff did not allege that his depression kept him from working when he applied for disability. (R. 75 (Plaintiff alleged disability due to arthritis in both knees and ankle).) Further, Plaintiff did not offer a provider's opinion as to how his depression affected his capacity for work. A doctor from his primary care clinic listed depression as one of his diagnoses but did not list any non-exertional limitations aside from being absent from work more than 3 times per month, without specifying if this was due to physical or mental symptoms. (R. 691.) "There is no error when there is no doctor's opinion contained in the record that indicated greater limitations than those found by the ALJ." *Best v. Berryhill,* 730 F. App'x 380, 382 (7th Cir. 2018) (signals and citations omitted). If Plaintiff believes a psychiatric functional opinion was necessary to support his disability claim, it was his responsibility to put forth such evidence, which he did not do; he may not now argue the ALJ was without medical

evidence to assess a mental RFC limitation where he failed to allege or submit evidence regarding one. *Gedatus v. Saul*, 994 F.3d 893, 904 (7th Cir. 2021) ("A fundamental problem is she offered no opinion from any doctor to set sitting limits, or any other limits, greater than those the ALJ set."); *Kathleen C. v. Saul*, 2020 WL 2219047, n. 9 (N.D. Ill. May 7, 2020) ("But whatever the form of evidence supporting her professed limitations, it is Plaintiff's burden to present it, and she failed to do so; she cannot substantiate her claims by insisting they are impossible to substantiate.").

Additionally fatal to his argument, Plaintiff fails to identify any depression-related RFC restrictions he believes should have been included in the ALJ's finding. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (any error in RFC was harmless because claimant cited no evidence of greater limitations nor hypothesized any additional work restrictions).

Regardless, the ALJ is responsible for assessing Plaintiff's RFC "based on all of the relevant medical and other evidence." 20 C.F.R. § 416.945(a)(3), 416.946(c); *see, also, Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) ("[T]he determination of a claimant's RFC is a matter for the ALJ alone – not a treating or examining doctor – to decide."). An RFC decision should be upheld as long as "substantial evidence supports what the ALJ ultimately concluded about the claimant's RFC." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007); *Michael B. v. Berryhill*, 2019 WL 2269962, at *6 (N.D. Ill. May 28, 2019). Plaintiff points out that he reported symptoms of depression, has had formal mental health treatment including medication and counseling, and has done a psychiatric intake. (Dkt. 17, p. 9.) But, contrary to Plaintiff's contention, this does not show he would be incapable of simple, routine, and repetitive tasks. *Ivair M. v. Berryhill*, 2019 WL 2085139, at *4 (N.D. Ill. May 13, 2019) ("Instead of point to any specific errors in the RFC, Plaintiff recites his diagnosis, treatment, and complaints. But this does not establish work-related limitations or show that the ALJ should have included additional limitations in the RFC."). "It was [Plaintiff's] burden to establish not just the existence of [his] conditions, but to provide evidence that they support

15

specific limitations affecting [his] capacity to work." *Weaver v. Berryhill*, 746 F. App'x 574, 579 (7th Cir. 2018). Plaintiff has not provided evidence of specific limitations affecting his capacity to work, or even shown he would be incapable of the RFC assessed by the ALJ. Therefore, because substantial evidence supports the ALJ's residual functional capacity finding, the Court will not overturn the ALJ's decision on this basis.

**5.      CONCLUSION**

For the reasons detailed above, the Court finds the ALJ's decision to be supported by substantial evidence and contain the requisite adequate logical bridges between the evidence and his conclusion. The Court declines to remand this matter. Therefore, Plaintiff's motion for summary judgment (dkt. 17) is DENIED and Defendant's motion for summary judgment (dkt. 20) is GRANTED. The final decision of the Commissioner is affirmed.

**ENTERED: July 13, 2022**

_____
Susan E. Cox,
United States Magistrate Judge